IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSSISSIPI
NORTHERN DIVISION

**ALLYSON MAJORS**                                                                                                   **PLAINTIFF**

V.                                                            CIVIL ACTION NO. 3:23-cv-00265-HTW-MTP

**CITY OF CANTON;**
**RODRIQUEZ BROWN,** Individually and
in his Official Capacity as Alderman**;**
**FRED ESCO, JR.,** Individually and
in his Official Capacity as Alderman;
**LES PENN,** Individually and
in his Official Capacity as Alderman;
**TIM C. TAYLOR,** Individually and
in his Official Capacity as Alderman;
**LAFAYETT E. WELLS,** Individually and
in his Official Capacity as Alderman; and
**KIMBERLY BANKS,** Individually and
in her Official Capacity as Attorney for the City of Canton                         **DEFENDANTS**

**ORDER**

The matter before this court concerns allegations of purported election fraud in the City of Canton, Mississippi, a political subdivision and municipal corporation, organized and existing under the laws of the State of Mississippi ("the City). Plaintiff, Allyson Majors ("Majors"), alleges that she was demoted and ultimately terminated from her position as the City's Municipal Clerk because she reported attempted City election manipulation through forgery, a crime which would have caused members of the public to be deceived.

Majors has sued the following individuals in addition to the City: five members[1] of the Canton Board of Aldermen[2], in their individual and official capacities; and Kimberly Banks, the City Attorney, in her individual and official capacity. This court shall henceforth refer to these defendants collectively as "the Municipal Defendants".

## I. FACTS PRESENTED

Majors served as the Canton City Municipal Clerk from June 2020 to February 2021. One of her responsibilities as the City's appointed[3] municipal clerk was to receive and process qualifying papers from potential candidates in the City's primary and general elections[4]. The title of "Municipal Clerk" did not bestow upon Majors any statutory power to disqualify candidates. Majors collected the candidates' Statement of Intent and filing fee ($10.00) and submitted such to the proper political executive committee (Republican or Democratic).

During the 2021 election season, Majors received such qualifying papers from potential candidates who sought to appear on the City's primary election ballot (April 6, 2021), and the general election ballot (June 8, 2021). Among the 2021 hopeful candidates was one Mr. Colby

---

[1] Plaintiff initially named seven defendants in her lawsuit; however, Plaintiff voluntarily dismissed her claims against defendants Lafayette Wales and Eric Gilkey [16]. The following remaining defendants remain: Rodriquez Brown; Fred Esco, Jr.; Daphne Sims; Les Penn; and Tim C.Taylor.

[2] Canton's Board of Aldermen consists of seven-members, one from each Ward. The Board, along with the Mayor, make up the City of Canton's governing body. Both the Mayor and the Board of Aldermen are elected for concurrent four-year terms. See https://cantonms.gov/government/board-of-aldermen/. Throughout this written opinion, the terns "governing body" and "governing authorities" are used interchangeably.

[3] Under the Canton City Code of Ordinances, the Board of Aldermen, by a majority vote thereof, appoints a city clerk for the city. The mayor casts a tie-breaking vote, if necessary, and there exists no specific fixed term of appointment for the city clerk. See *Scott v. Stater*, 707 So. 2d 182 (1997).

[4] In Mississippi, municipal political party candidates for mayor, alderman or councilman must submit a filing fee of ten dollars ($10.00) to the Municipal Clerk, payable to the Municipal Executive Committee (Miss. Code Ann. § 23-15-309) by 5:00 p.m. at least sixty (60) days prior to the primary election and, (2) a written Qualifying Statement of Intent containing the name and address of the candidate, the name of the party with which the candidate is affiliated, and the office the candidate is seeking (Miss. Code Ann. § 23-15-309 (1972)). The Municipal Clerk must forward the Statement of Intent and the filing fee to the Secretary of the proper Executive Committee. See https://www.sos.ms.gov/elections-voting/candidate-qualifying-forms.

Walker ("Walker"), a Canton city resident vying for the Ward 1 seat on the Board of Aldermen[5]. Walker timely submitted to Majors his application and letter of intent to run in the election.

Defendant Rodriquez Brown ("Brown") held the Ward 1 Alderman seat in 2021; as such, he was the incumbent in the upcoming election. According to Majors, Brown sought to control the election process by keeping his competitor's, ("Walker"), name from appearing on the ballot. Majors alleges that Brown colluded with the Canton City Attorney, Defendant Kimberly Banks ("Banks"), to carry out his plan to disqualify Walker as a candidate for the 2021 election cycle.

This scheme, says Majors, began with the City Attorney mailing a letter [Doc. 27-2, 3], to Walker, explaining to him that he was disqualified as a candidate. The offered "reason" was Walker's failure to name a political party with which Walker was affiliated. Majors claims that this letter, originating from the City Attorney's office, included Majors's forged signature. Majors claims that ""[t]he letter was sent to Mr. Walker by Mrs. Debra Brown, or someone designated by her." [Doc.1-1, 7].

Majors adds that the disqualifying letter to Walker was not the only such allegedly forged letter. Jonathan Dixon ("Dixon") another applicant for the primary election, too, received a disqualifying letter bearing Majors's supposedly forged signature.

The record before this court provides no explanation who authorized Debra Clerk, the Human Rights Director at this time, to send out the allegedly forged disqualifying letters. As stated above, elections management is tasked to the City Clerk.

Majors claims that, upon discovering that Dixon and Walker had received allegedly forged disqualifying letters, she reported the matter to the Mississippi's Attorney General's Director of Public Integrity, Candance Gregory. In an undated letter, bearing the subject line "Public

---

[5] See Fn. 2.

Corruption" [Doc. 27-2] Majors wrote that she neither composed the disqualifying letters, nor affixed her signature thereto.

In her report to the Attorney General, Majors stated that she "has reasons to believe" that the disqualifying letters were composed by the City Attorney, Kimberly Banks, and sent by Deputy Clerk Debra Brown. Majors's letter to the Attorney General's Office states that this "falsification of [her] name" on the disqualifying papers allegedly drafted by Banks and sent by Debra Brown, "represents public corruption, forgery, public distrust and an attempt to change the outcome of an election." Majors implored the Officer of Public Integrity to investigate the alleged conspirators perpetuating this criminal conduct.

Majors avers that on February 10, 2021, two days after reporting the alleged illegal conduct, the Board of Aldermen and Mayor voted to terminate Major's position as Canton City Clerk and demoted[6] her to the position of Director of Human Resources ("HR"). [*See* City's Board Minutes dated February 10, 2021, Doc. 7-2]. Concurrently, says Majors, the Canton governing body appointed Debra Brown to the position of municipal clerk.

Plaintiff's grievance, however, does not end with her demotion. On August 17, 2021, Majors was terminated from her position in HR. In a letter to Majors, dated August 23, 2021 [Doc. 27-2], Brown, acting as the new municipal clerk, outlined several reasons[7], for Majors' termination, all which Majors deems manufactured and baseless. Notably, this court has before it no Board Minutes authorizing Debra Brown's termination letter. Nor does the termination letter bear the signature of any member of Canton's governing body. This letter, Doc. 27-3, also is

---

[6] Plaintiff's Complaint states that "shortly after reporting this [allegedly] illegal conduct", Majors was "terminated as Canton City Clerk and demoted to the position of Director of Human Resources." [Doc. No. 1-1 at ¶ 19]. This court has before it no further information regarding the job responsibilities as Director of HR.

[7] The letter indicates that Majors's termination was based on: failure to master HR duties; refusal to comply with procedural mandates; failure to comply with the City's social media policies; and insubordination towards Debra Brown.

devoid of any signatures from any interested party- the signature lines for "Debra Brown, City Clerk"; "Allyson Majors"; and "witness to signature refusal, if applicable"- all remain blank.

Debra Brown's termination letter to Majors accuses Majors of failing to comply with several City policies and procedures, namely: failure to comply with the City's social media policies and procedural mandates requiring leave and tardiness. The letter informed Majors that these listed infractions form the basis of her termination. In the same letter, Debra Brown reminded Majors that Canton's governing authorities hold the power to discharge the City Clerk at any time, either with or without cause. These governing authorities, said Debra Brown, had chosen to exercise their right to terminate Majors.

Arguing that each presented reason was simply pretextual, Plaintiff contends that she was stripped of her job for two reasons only: (1) because she refused to disqualify Walker as a candidate in the primary election; and (2) because she reported the allegedly illegal conduct of the City Attorney, Banks, and that of the incumbent Ward 1 Alderman Brown.

Majors claims that Defendants Brown and Banks conspired to produce her demotion and subsequent termination from employment. Further, says Majors, Brown and Banks persuaded the other Aldermen on the Board to approve and further their plans.

Debra Brown's termination letter to Majors [Doc. 27-3] also contained a provision related to appellate procedure:

> You may appeal the City of Canton's decision to terminate your employment by filing a written appeal specifying your reasons for objecting to your termination within five (5) days of receiving this disciplinary action. A written appeal should be filed with the City Clerk, Debra Brown.

[Doc. 27-3, 3].

Majors attests that after receiving the above-referenced termination letter, she twice requested to be heard by the Board of Aldermen. Whether a timely written appeal was ever filed

is unclear. The Board denied both requests. Majors states that she was entitled to a hearing under the City of Canton's Personnel Policies and Procedures Handbook. She claims that by denying, unequivocally, her requests for a hearing, Municipal Defendants violated both federal and state law.

## II.    PROCEDURAL POSTURE

On February 9, 2023, Majors filed suit in the Circuit Court of Madison County, Mississippi, asserting claims against the Municipal Defendants for wrongful termination; procedural and substantive due process violations; and civil conspiracy [Docket No. 1-1]. On April 19, 2023, the Municipal Defendants removed Plaintiff's suit to this federal forum under the auspices of Title 28 U.S.C. § 1331, federal question subject matter jurisdiction, which confers upon district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Federal question subject matter jurisdiction is present here, contend the Municipal Defendants, because Majors brings her claims under federal statutes 42 U.S.C. §§ 1983[8]" and 1985[9].

---

[8] 42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission take in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[9] Title 42 U.S.C. § 1985 accords a cause of action to any person injured as a result of a conspiracy to interfere with the civil rights described in the Act: Subsection 1 relates to a conspiracy to prevent a public official from performing his duty; Subsection 2 relates to a conspiracy to obstruct justice or to intimidate a party, a witness, or a juror; and Subsection 3 concerns the acts of two or more persons in conspiring to, or in going in disguise to, deprive any person of certain rights.." *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987).

This Court agrees and finds that it has federal question subject-matter jurisdiction over this matter. This court also exercises supplemental jurisdiction over Plaintiff's Mississippi state law claims of wrongful demotion and termination against her employer under Title 28 U.S.C. § 1367[10].

Seeking to rid themselves of Plaintiff's lawsuit, the Municipal Defendants have filed two motions: a Motion to Dismiss and a Motion for Summary Judgment **[Dockets nos. 6 and 8]**. The Municipal Defendants, by way of these motions, seek dismissal of this case under Fed. R. Civ. Pro. 12(b)(6)[11] or, alternatively, summary judgment in their favor under Fed. R. Civ. Pro. 56[12].

On February 18, 2023, this court held a status conference, whereat the court repeated its previous inquiries to the parties. During oral arguments, this court requested a list of undisputed facts from the parties. No such list of undisputed facts exists.

### III.   LEGAL STANDARDS

#### A. MOTION TO DISMISS

. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the central question is whether Majors's complaint champions claims that are plausible. *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555–62 (2007). This question is answered by comparing the legal claims that have been

---

[10] (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties

[11] *See* Fed. R. Civ. Pro. 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defense by motion: failure to state a claim upon which relief can be granted.").

[12] *See* Fed. R. Civ. Pro. 56 ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.").

identified in the complaint with the factual allegations offered in support thereof, inclusive of any exhibits attached to the complaint and answer. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

Merely reciting the elements of a cause of action, or making conclusory factual or legal assertions, however, is insufficient to defeat a motion to dismiss. *Jordan v. Flexton*, 729 F. App'x 282, 284 (5th Cir. 2018). Additionally, documents attached to a motion to dismiss are considered part of the pleadings if they are referenced in plaintiff's complaint and are central to her claim. Submission of these documents "merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted). Accordingly, this court may consider documents that are central to Majors' claims without converting the Municipal's motion to dismiss into a summary judgment motion. See *Causey v. Sewell Cadillac-Chevrolet, Inc*. 394 F.3d 285, 288 (5th Cir. 2004) (stating that a court may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the documents are referred to in the complaint and are central to the plaintiff's claim).

### B. SUMMARY JUDGMENT

In the alternative, when analyzing a motion for summary judge under Federal Rule of Civil Procedure 56, the central question this court must answer is whether the record evidence provides a viable basis for relief as opposed to looking to the pleadings alone. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). This question is answered by determining if genuine issues of material fact exist. If so, the moving party's campaign for a favorable judgment is frustrated. The moving party is entitled to judgment as a matter of law, on the other hand, if the undisputed facts under the applicable law show the movant's entitlement to summary judgment. FED. R. CIV. P.

56(c).

To avoid summary judgment, then, a plaintiff must produce evidence of "specific facts showing the existence of a genuine issue for trial." *Foulston Siefkin LLP v. Wells Fargo Bank of Texas, N.A.*, 465 F.3d 211, 214 (5th Cir. 2006). A factual issue is "material if its resolution could affect the outcome of the action," *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007). "Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment," *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted).

### C. QUALIFIED IMMUNITY DEFENSE ASSERTED

The United States Court of Appeals for the Fifth Circuit consistently has recognized that in addition to immunity from liability, "qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)). The *Backe* court emphasized that the protection from pretrial discovery is "one of the most salient benefits of qualified immunity." *Id.* For this reason, the Fifth Circuit follows "a careful procedure" with regard to discovery when a motion asserting qualified immunity has been made. *Id.* Under that procedure, this court may only defer its qualified immunity ruling "if further factual development is necessary to ascertain the availability of that defense." *Id.* Before allowing any discovery, this court, "must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.' " *Id.* (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994–95 (5th Cir. 1995); and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

This specificity of facts necessary in cases when qualified immunity has been asserted is referred to as the "heightened pleading" requirement, which requires a plaintiff to plead

"allegations of fact which focus specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir.1999) (citing *Wicks v. Mississippi State Employment Servs.,* 41 F.3d 991, 995 (5th Cir.1995)).

In certain cases, it may be impossible to rule fairly on the qualified immunity question on the facts adduced by the parties early in the litigation. Those particular cases may be appropriate for narrowly-tailored discovery, designed fully to flesh out the evidence supporting or negating the immunity claim; however, because the doctrine of qualified immunity is designed to provide immunity from *suit,* not just from liability, a court should not permit overbroad, cumbersome, or expensive discovery that effectively destroys the purpose of the immunity doctrine. *Backe,* 691 F.3d 645, 648.

In order to permit such discovery, a court first must find that the plaintiff has "pled specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm plaintiff has alleged and [specific facts] that defeat a qualified immunity defense with equal specificity." *Id.* at 648. Once that finding is made, the court must identify the questions of fact that cannot be resolved without further discovery. *Zapata v. Melson,* 750 F.3d 481, 485 (5th Cir.2014). Finally, the court must craft a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim...." *Boulos v. Wilson,* 834 F.2d 504, 507–08 (5th Cir.1987).

### IV. DISCUSSION

#### A. THE RECORD EVIDENCE

The record before this court is beset with temporal and factual inconsistencies. First, this court is unclear as to Debra Brown's role in this whole matter. Throughout the papers, Debra Brown has been identified under various labels: City Clerk; Municipal Clerk; Deputy Clerk; Deputy Clerk of Human Resources; and Director of Human Resources.

Although Plaintiff fails to name Debra Brown as a defendant in this suit, Plaintiff avers that Debra Brown, the "then City Clerk", or someone on Debra Brown's behalf, sent the allegedly forged disqualifying letters to applicants Walker and Dixon prior to February 10, 2021. The record reflects, however, that Majors remained in her position as the Canton City Clerk until February 10, 2021. This court has before it information regarding Debra Brown's authority to send disqualifying letters to potential candidates, a task seemingly reserved for the City Clerk.

Evidentiary voids further punctuate this court's understanding of the presented facts. This court had the benefit of reviewing the Board of Aldermen's meeting minutes concerning Plaintiff's demotion from City Clerk to HR Director; however, the parties offer no evidence that the Board even discussed, much less affirmed properly, the Plaintiff's termination from employment.

Debra Brown authored Majors's termination letter. The letter offers merely that the "governing authorities" resolved to exercise their authority to discharge Majors "either with or without cause". No signatures are affixed to this significant document.  Shedding light on these various blank spaces could reasonably affect the outcome of this action.

### B. LEGAL ANALYSIS

#### *Mississippi's Employment-at-Will Doctrine and Exceptions Thereto*

Since 1858, Mississippi has followed rigidly the common law employment-at-will principle that "a contract for employment for an indefinite period may be terminated at the will of either party, whether the discharge is for any reason or no reason at all.'" *Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 218 (Miss. 2015) (internal quotations omitted).

Majors appears to be an at-will employee. The City of Canton's handbook states the following in reference to the City's employees:

> Nothing contained in this Handbook is to be construed as a guarantee of continued employment. . . .

> It is the City of Canton's policy that all employees who do not have a written employment contract with the City for a specific fixed term of employment are employed at the City's will and are subject to termination at any time, for any reason, with or without cause or notice. At the same time, such employees may terminate their employment at any time for any reason. This policy may not be modified by any statements contained in this manual or any other employee handbooks, employment application, recruiting material, or other materials provided to applicants and employees in connection with their employment. None of these documents, whether singularly or combined, is meant to create an express or implied contract of employment for a definite period, nor any express or implied contract concerning any terms or conditions of employment. Similarly, the City's policies and practices with respect to any matter are not to be considered on the City's part or as stating in any way that that termination will occur only "for cause." Statements of specific grounds for termination set forth in this manual as in any other document are examples only, not all inclusive lists, and are not intended to restrict the City's right to terminate at will.

[Doc No. 8-1]. Although recourse for an at-will employee, such as Majors, is limited, the Mississippi Supreme Court in *McArn v. Allied Bruce-Terminix Co.*, carved out a public policy exception to the at-will doctrine by recognizing two situations in which an employee is not barred by the common law rule of employment at will from bringing a tort for damages against the employer: (1) where an employee is discharge for refusing to participate in an illegal act; and (2) where an employee is discharged for reporting illegal acts of his employer to his superior or to a third party. 626 So. 2d 603, 606 (Miss. 1993).

The allegedly illegal act reported must violate a criminal statute rather than just a civil statue. *See Howell v. Operations Management Intern., Inc.*, 161 F. Supp. 2d 713, 719 (N.D. Miss. 2001), judgment aff'd, 77 Fed. Appx. 248 (5th Cir. 2003) (finding that the *McArn* exception did not provide protection to a plaintiff who reported civil violations under OSHA[13] and was then terminated). Not all allegations reported by an employee, then, trigger invocation of the *McArn* exception.

---

[13] The Occupational Safety and Health Administration (OSHA) is a federal agency that sets and enforces workplace safety standards. OSHA also provides information, as well as training and assistance to workers and employees. See osha.gov/

In the present case, Plaintiff's Complaint alleges, and her Affidavit supports, a claim under state law for wrongful termination because "she reported illegal election activity to the Mississippi Attorney General". The alleged criminal act is forgery, in violation of Miss Code Ann § 97-19-39[14], "Obtaining signature or thing of value with intent to defraud." This law defines false pretenses and prescribes financial and penal penalties for the crime.

The close temporal proximity between Plaintiff's complaint to the Attorney General and her subsequent termination itself gives this court pause. The parties agree, and the record reflects, that City Attorney Banks directed Majors to mail the allegedly forged disqualifying letters on February 8, 2021---Majors reported this perceived illegal activity to the Attorney General—On February 10, 2021, a mere two days later, the Board voted to remove Majors from the position of City Clerk. Whether there exists some retaliatory motive here is an issue.

In light of the aforementioned legal principles, this court finds that limited discovery is necessary to determine:

1. Who signed the allegedly forged disqualifying letters?

2. Who was the Canton City Clerk when the allegedly forged letters were mailed?

3. Who mailed the disqualifying letters? If Debra Brown, what authority did she have to do so?

---

[14] (1) Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of less than Five Hundred Dollars ($500.00), upon conviction thereof, shall be guilty of a misdemeanor and punished by imprisonment in the county jail not exceeding six (6) months, and by fine not exceeding One Thousand Dollars ($1,000.00).

(2) Every person, who with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of Five Hundred Dollars ($500.00) or more, upon conviction thereof shall be guilty of a felony and punished by imprisonment in the State Penitentiary not exceeding ten (10) years, and by a fine not exceeding Ten Thousand Dollars ($10,000.00)

Miss. Code Ann. § 97-19-39 (West)

4. Did the Board of Aldermen and the City Mayor approve Majors's termination?

5. Why did the termination letter submitted from Debra Brown to Majors reflect no signatures? Who terminated Majors? If Debra Brown, what authority did she have to do so?

## V.    HOLDING

As stated above, this court is persuaded that genuine disputes of material facts permeate this lawsuit; therefore, this court cannot summarily find for the Municipal Defendants at this juncture. This court, then, must **DENY,** at this juncture, the Municipal Defendants' ***Motions to Dismiss or, in the alternative, for Summary Judgment* [Docket No. 6 and 8],** and allow limited qualified immunity related discovery to plug the many holes impairing this action, under the following parameters:

1. The Discovery period shall be three (3) months from the entry of this Order;

2. The parties may file any requisite motions involving this matter within two (2) weeks after the end of the Discovery Period;

3. At the conclusion of the Discovery Period, the parties shall have one (1) month to file motions for summary judgment, if they so choose; and

4. Timelines for briefs and responses shall remain the same under the appropriate Federal Rules of Civil Procedure

**SO ORDERED** this the 7th day of March, 2025.

/s/HENRY T. WINGATE  
UNITED STATES DISTRICT JUDGE